IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER:

PAMELA POGGIALI, an individual,

    Plaintiff,

v.

THE TJX COMPANIES, INC.,
a Massachusetts corporation,

    Defendant.
_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff, PAMELA POGGIALI, by and through her undersigned attorneys, hereby sues the Defendant, THE TJX COMPANIES, Inc. (hereinafter, referred to as "MARSHALLS"), and in support states as follows:

### **Jurisdictional Allegations**

1.    This is an action for damages in excess of Fifteen Thousand Dollars ($15,000), exclusive of interest, costs, and attorney's fees.

2.    PAMELA POGGIALI (hereinafter referred to as "EMPLOYEE"), is an individual, who at all times material herein resided in Palm Beach County Florida and is *sui juris*.

3. MARSHALLS is a Massachusetts corporation, and at all times material herein was registered and conducting business in the State of Florida.

4. Venue is proper as the cause of action occurred in Palm Beach County, Florida, and the action is being brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C.S.§ 12101, which is a Federal Statute.

5. All conditions precedent have been met or otherwise waived.

## Statement of Facts

6. The EMPLOYEE, who is a 56-year-old female, was originally hired by MARSHALLS, which is a national chain of department stores, in the year 2010.

7. The EMPLOYEE began working at MARSHALLS as a customer experience coordinator and rose to the rank of assistant store manager.

8. The EMPLOYEE has over 12.5 years of retail experience and 9.5 years of experience as an assistant manager.

9. In July 2019, the EMPLOYEE began to experience severe knee pain, largely due to the fact that her position at work required many long hours on her feet each day.

10. On July 14, 2019, the EMPLOYEE sought medical treatment and had a conventional radiography of her left knee at Holy Cross Urgent Care and Imaging Center.

11. A few days later, on July 19, 2019, the EMPLOYEE visited the emergency services department of Boca Raton Regional Hospital and had an X-ray performed on her left knee.

12. That same day, the EMPLOYEE had a Letter of Medical Verification filled out by her medical providers, and sent to and received by her employer, MARSHALLS. The Letter stated that the EMPLOYEE may not return to work until July 23, 2019, due to knee pain and swelling.

13. On August 7, 2019, the EMPLOYEE filed a Medical Leave of Absence Application under Family Medical Leave Act (FMLA) with MARSHALLS due to the pain caused by her disability, which impeded her ability to walk and stand.

14. Upon receipt of the letter, MARSHALLS approved the EMPLOYEE'S application for Medical Leave of Absence, which was approved and back-dated by MARSHALLS, to begin August 1, 2020.

15. During the time of the FMLA leave, the EMPLOYEE continued to seek treatment for the knee pain and her disability in accordance with her recommended treatment plan.

16. On August 19, 2019, due to her continued left knee pain, the EMPLOYEE visited the Walk-In Orthopedics and Sport Medicine where a diagnostic ultrasound of the left knee indicated a left knee tear of medial and lateral

3

meniscus. An MRI was also taken on this date and the EMPLOYEE was instructed to return to review the results in few weeks.

17. A week later, on August 26, 2020, the EMPLOYEE filed a Medical Leave of Absence Extension Form, which was provided to her EMPLOYER. On the form, the EMPLOYEE's physician stated that the EMPLOYEE would be able to return to work on September 30, 2019.

18. The same day, MARSHALLS provided EMPLOYEE with a Medical Leave Status Update that evidenced the EMPLOYEE was approved sick/std pay from August 1, 2019 through September 7, 2019.

19. On August 30, 2019, the EMPLOYEE returned to Boca Raton Walk-In Orthopedics and Sports Medicine to review the results of her MRI which revealed complex medial meniscus tear, joint effusion, and synovitis.

20. On September 6, 2019, MARSHALLS provided the EMPLOYEE with a Medical Leave Status Update to notify her that the sick/std pay was approved from August 1, 2019 through September 29, 2019.

21. On September 9, 2019, the EMPLOYEE provided MARSHALLS with a Short-Term Disability Request for Additional Information Form, in which the EMPLOYEE's medical care provider stated that the EMPLOYEE would be able to return to work on October 9, 2019.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

22. Subsequently, on September 18, 2019, MARSHALLS provided the EMPLOYEE with a Medical Leave Status Update to notify her that her sick/std pay was approved by MARSHALLS from August 1, 2019 through September 28, 2019, and that MARSHALLS would require an update to review pay beyond this date.

23. On September 27, 2019, the EMPLOYEE received a letter from Zurich Life & Absence Management Administrations Solutions (hereinafter "Zurich") informing the EMLOYEE that MARSHALLS had started a Long-Term Disability Claim on her behalf and additional forms needed to be completed before the claim could be reviewed.

24. On October 1, 2019, the EMPLOYEE underwent left knee arthroscopic chondroplasty of the patella femoral compartment and a partial medial and lateral meniscectomy. The EMPLOYEE's medical provider recommended the EMPLOYEE abstain from work for six weeks to attend physical therapy.

25. On October 2, 2019, MARSHALLS provided the EMPLOYEE with a Medical Leave Status Update to notify her that sick/std pay was approved from August 1, 2019 through October 8, 2019.

26. On October 11, 2019, the EMPLOYEE completed two of the three required forms for Zurich to review her Long-Term Disability Claim. That same day, the EMPLOYEE submitted a completed Short-Term Disability- Request for

Additional Information Form that stated by her medical provider that the EMPLOYEE should be able to return to work on November 22, 2019.

27. On October 18, 2019, Zurich sent the EMPLOYEE a letter providing notice that if the three required forms were not returned to Zurich by November 2, 2019, then the Long-Term Disability Claim would be not be reviewed. Subsequently, the EMPLOYEE provided all three required forms to Zurich.

28. On October 28, 2019, Zurich sent a letter to the EMPLOYEE informing her that the Long-Term Disability Claim had been approved. It was determined Long Term Disability benefits and leave status would begin on October 30, 2019.

29. On November 6, 2019, MARSHALLS provided the EMPLOYEE an LTD (Long Term Disability) Leave Status Update which informed that the Long-Term Disability was approved from October 31, 2019, to a date to be determined.

30. On November 29, 2019, the EMPLOYEE's medical provider authored a letter indicating that the EMPLOYEE may return to work on December 2, 2019.

31. As such, it was the EMPLOYEES' belief and plan to return to work on December 2, 2019.

32. Moreover, from the various documents sent by MARSHALLS, it was the reasonable belief on the part of the EMPLOYEE, that when she returned to work, that she would still have her job.

33. When the EMPLOYEE returned to work at MARSHALLS, she was devastated to learn that her position had been filled, and that she no longer had the same job at MARSHALLS.

34. The EMPLOYEE was told by MARSHALLS that she could take a lower paying job at MARSHALLS, or interview for an equivalent position at a sister store, such as TJ Maxx, for the position of assistant store manager.

35. MARSHALLS discriminated against the EMPLOYEE due to her health condition which required her to take leave from work.

36. MARSHALLS informed the EMPLOYEE that the job she had, prior to her leaving work due to her disability, was no longer available. Instead, as a condition of her being employed by MARSHALLS, the EMPLOYEE was offered another position at MARSHALLS, as a key carrier coordinator. The new position entailed a significant pay decrease from the job the EMPLOYEE had with MARSHALLS, prior to her leaving to treat her disability.

37. MARSHALLS effectively discriminated against the EMPLOYEE, by demoting her, and then offering her lower pay as a condition of her continuing employment with MARSHALLS. This was done to the EMPLOYEE due to her disability, which caused her to take approved time-off from work. MARSHALLS

offered the EMPLOYEE a lower-level position, with less pay, and one which the EMPLOYEE was overqualified for.

38. MARSHALLS claimed to the EMPLOYEE that her full-time job had been taken by another employee, and that there were no other vacant assistant store manager positions available for her, in the various districts.

39. MARSHALLS set up an interview for the EMPLOYEE for a vacant assistant store manager position at a sister store, TJ Maxx in late December 2019. Ultimately, MARSHALLS hired another candidate over the EMPLOYEE. Effectively, this prevented the EMPLOYEE from obtaining the last alternate position with equivalent benefits, pay, and other terms, albeit was at another company, and would require the EMPLOYEE to have to start employment at another sister store, not the same as MARSHALLS.

40. With no other options available to her, the EMPLOYEE took the lower paying job at MARSHALLS, which was a demotion for lesser pay, due to the necessity of the EMPLOYEE to support her family.

41. On April 27, 2020, the EMPLOYEE filed a charge of discrimination with the EEOC.

42. On September 29, 2020, the EMPLOYEE received her right to sue letter from the EEOC.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

43. Due to the actions on the part of MARSHALLS, the EMPLOYEE was required to hire the undersigned law firm to bring suit against her employer, and is now obligated to pay its reasonable attorneys' fees and costs.

## COUNT I
## Violation of § 760.10 Florida Statute

44. The EMPLOYEE avers all of the allegations in paragraphs 1 through 43 and incorporates them as if fully set forth therein.

45. Under Fla. Stat. § 760.10 (1), it is unlawful employment practice for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or martial status.

46. MARSHALLS discriminated against the EMPLOYEE based on her handicap condition.

47. MARSHALLS discriminated against the EMPLOYEE based on her handicap condition, when MARSHALLS refused to give the EMPLOYEE her position back, upon her return to work. In fact, MARSHALLS replaced the EMPLOYEE's assistant store manager position with another employee.

48. Worse, MARSHALLS stated that it would allow the EMPLOYEE to continue working for MARSHALLS, only on the condition that she agree to take a

lower level paying job as a "key carrier coordinator", which was essentially a demotion from assistant manager.

49. MARSHALLS then offered the EMPLOYEE an assistant store manager job at TJ Maxx, one which the EMPLOYEE would need to reapply and interview for. The EMPLOYEE did interview for the position at TJ Maxx but was not hired.

50. Out of desperation, and the need to support her family, the EMPLOYEE was forced to take the lower-paying job at MARSHALLS.

51. As such, MARSHALLS discriminated against the EMPLOYEE by failing to give her same job back and failing to provide her with the available equivalent position with the same pay, benefits, and other terms and conditions.

52. As a result of MARSHALLS adverse actions, the EMPLOYEE suffered adverse employment actions, as she was demoted to a lower position for which she receives less compensation.

WHEREFORE, the Plaintiff, PAMELA POGGIALI, respectfully requests this Honorable Court enter a judgement against the Defendant, THE TJX COMPANIES, INC., a Michigan Corporation, for compensatory damages, including all back pay, future pay, and any other pay she is entitled, including awarding

attorney's fees and costs, and all other relief this Honorable Court may deem just and proper.

## COUNT II
### Violation of 42 U.S. Code § 12112

53.     The EMPLOYEE avers all of the allegations in paragraphs 1 through 43 and incorporates them as if fully set forth herein.

54.     The Americans with Disabilities Act (ADA), 42 U.S.C.S.§ 12101, is an antidiscrimination statute.

55.     The Act forbids the discrimination against a qualified individual on the basis of disability. 42 U.S.C.S.§ 12112 (a)

56.     A qualified individual with a disability is a person who, with or without reasonable accommodation, can perform the essential functions of the employment position. 42 U.S.C.S.§ 12111 (8)

57.     A reasonable accommodation is one that allows the disabled employee to perform the essential functions of the employment position. 42 U.S.C.S.§ 12111 (8).

58.     To establish a prima facie case of disability discrimination, Complainant must show that (1) she is disabled; (2) she is qualified individual; and (3) she was subject to unlawful discrimination because of her disability. See *Santandreu v. Miami Dade Cnty.,* 513 Fed. Appx. 902, 905 (11th Cir. 2013).

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

59. The EMPLOYEE is disabled as evidenced by her medical records and leave requests properly filed with MARSHALLS.

60. The EMPLOYEE is a qualified individual as she was only unable to perform her job for a short period of time. The EMPLOYEE exhausted her FMLA leave and then requested a few short weeks to finish healing.

61. The EMPOYEE needed a small amount of additional time to fully recuperate from her surgery and physical therapy, which was necessitated due to her disability.

62. The EMPLOYEE was able to perform her job duties after the weeks required to heal and was able to perform such duties upon her returning to work.

63. The EMPLOYEE only asked for a short period of time, in order to seek treatment due to her disability.

64. The EMPLOYEE did not seek a multi-month leave of absence, upon returning from her approved FMLA leave, but only sought a short leave of absence.

65. The EMPLOYEE did not request an indefinite period of multiple months for which she was unable to work.

66. Pursuant to *Severson v. Heartland Woodcraft, Inc.* 872 F. 3D 476 (2017), intermittent time-off, or a short leave of absence, say a couple of days, or

even a couple of weeks, may in appropriate circumstances be analogous to a part time or modified work schedule.

67. As such, the EMPLOYEE only sought a short leave of absence due to her treatment of her disability, after her FMLA time had expired.

68. MARSHALLS not only did not give her the short leave of absence, which the EMPLOYEE required to fully recuperate to be able to perform her job, but worse, MARSHALLS said it would give the EMPLOYEE the time off, but only if she accepted a lower paying job, essentially being demoted from her assistant manager job.

69. Upon the EMPLOYEE returning to work, after being treated for her disability, her employer, MARSHALLS informed her that her position was no longer available, nor any other vacant similar positions. Moreover, that her position had been filled permanently by another employee.

70. Furthermore, MARSHALLS discriminated against the EMPLOYEE when it refused to provide her with an equivalent position, as the similar job at a sister store, TJ Maxx, the EMPLOYEE was required to apply and interview for the similar assistant manager position. When the EMPLOYEE did apply for the job at TJ Maxx, she was not hired.

71. Lastly, MARSHALLS discriminated against the EMPLOYEE when it hired a replacement for the EMPLOYEE, which was four weeks before the EMPLOYEE was set to return from being treated for her disability.  MARSHALLS refused to provide the EMPLOYEE additional weeks off of work, time she needed in order to recuperate from her surgery.  During the time that the EMPLOYEE was recuperating, MARSHALLS replaced the EMPLOYEE, and her job was given away, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.S.§ 12101.

WHEREFORE, the Plaintiff, PAMELA POGGIALI, respectfully requests this Honorable Court enter a judgement against the Defendant, THE TJX COMPANIES, INC., a Michigan Corporation, for compensatory damages, including all back pay, future pay, and any other pay she is entitled, including awarding attorney's fees and costs, and all other relief this Honorable Court may deem just and proper.

## COUNT III
**Violation of 28 U.S. Code § 2615 Family Medical Leave Act**

72. The EMPLOYEE avers all of the allegations in paragraphs 1 through 43 and incorporates them as if fully set forth herein.

73. Under 29 U.S. Code § 2615 (a) (1), it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercises, any right provided under this subchapter.

74. As provided above, the subchapter 29 of the U.S. Code includes 29 U.S. Code §2614 (a) which provides that in general any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave either (a) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (b) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

75. Thereby, MARSHALLS interfered with the EMPLOYEES right to be restored to her position.

76. MARSHALLS was aware of the EMPLOYEE's serious health condition which impeded her ability to perform her job function and was at all times notified of when the EMPLOYEE was expected to return back to work.

77. MARSHALLS knew the EMPLOYEE was intending on returning to work ahead of exhausting her long-term disability and needed just a few additional weeks to recover.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

78. MARSHALLS further relieved the EMPLOYEE of her position and filled it with another individual.

79. When the EMPLOYEE implored MARSHALLS to restore her position or be placed in an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

80. MARSHALLS claimed that it did have an equivalent position available in the form of assistant store manager at a sister store, TJ Maxx.

81. The EMPLOYEE was told to interview for the position, which was her equivalent position. The EMPLOYEE did interview and was not chosen for this position.

82. Subsequently, MARSHALLS discriminated against the EMPLOYEE due to her disability, when it told her that she could continue to be employed by MARSHALLS, but that she would have to take a lower-level job, one of which she was overqualified, and receive less pay than before she left work due to her disability. Essentially, the EMPLOYEE was demoted in position and pay by MARSHALLS, due to her disability, and taking the time off to seek treatment of her disability.

WHEREFORE, the Plaintiff, PAMELA POGGIALI, respectfully requests this Honorable Court enter a judgment against the Defendant, THE TJX

COMPANIES, INC., a Massachusetts Corporation doing busines in Florida, for compensatory damages, interest, costs and all other damages and relief this Honorable Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff demands a trial by jury on all issues so triable.

Dated: December 28, 2020                              Respectfully submitted,


/s/ *JAMIE ALAN SASSON*_____
JAMIE ALAN SASSON
Florida Bar No. 10802

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (954) 570-6757
*Attorneys for the Plaintiff*